EDWARDS et al., Respondents, v. MURI, Appellant.

(No. 5,659.)

(Submitted April 21, 1925. Decided May 9, 1925.)

[237 Pac. 209.]

*Real Property—Vendor and Purchaser—Breach of Contract of Sale by Purchaser—Rescission—Recovery for Improvements Made—Vendor Retaking Possession—Barred from Recovering Unpaid Purchase Price—Promissory Notes—Extension of Time to Make Payment—Consideration—Findings.*

Promissory Notes—Giving of Note for Pre-existing Debt Does not Create New Debt, in Absence of Agreement.
    1.   The giving of a negotiable promissory note for a pre-existing debt does not discharge that debt and create a new debt independent thereof, in the absence of an agreement between the parties to that effect, and the burden of showing such an agreement rests upon him who relies upon it.

Findings—When Implied.
    2.   Under the doctrine of implied findings, where a finding necessary to support a judgment, otherwise correct, was not made, it will be presumed to have been made.

Promissory Notes—Vendor and Purchaser—Acceptance of Note for Interest Past Due—Waiver of Right to Declare Contract Terminated—Extension of Time for Payment—Consideration.
    3.   Where the vendor of land accepted a note in payment of interest past due on a deferred payment of the purchase price, he waived the right given him under the contract of sale to declare the contract terminated by its breach, and extended the time in which the amount might be paid, and such extension was a sufficient consideration for the note.

Vendor and Purchaser—Land Contract—Rescission by Mutual Consent—Agreement Necessary.
    4.   Before a contract of sale of land may be said to have been rescinded by mutual consent, it must appear that there was an intention on the part of both the vendor and purchaser—a meeting of minds at the same time—to rescind it; *i. e.,* there must have been a new agreement made subsequently to the original contract and before performance thereof was due.

Same—Termination of Contract of Sale—What Does not Constitute.
    5.   Where the purchaser of land had defaulted and left the premises, and thereafter the vendor leased them to another with the under-

────────────────────

1.   See 21 R. C. L. 70.
4.   Necessity of mutual consent on right to rescind contract without liability for nonperformance, note, 30 L. R. A. 40. See, also, 27 R. C. L. 639.

standing that if the purchaser should return he was to have posses· sion, the granting of the lease did not terminate the contract.

Same—Rescission by Defaulting Purchaser—When Claim Without Merit.
6. Where, in an action to recover from a purchaser of land the amount of taxes and interest unpaid at the date on which the vendor exercised his option to declare the contract ended for defaults of defendant, the latter contended that he had rescinded for misrepresenta· tions made by plaintiff but had made no attempt to rescind for more than two years after discovery of the alleged misrepresentations and did not rescind until he filed his answer, nor offered to restore everything of value he had received, but had merely abandoned the land, and more than a year after discovery had given a note for interest past due, he was not entitled to prevail even if the misrepresentations had been made.

Same—Breach of Contract by Purchaser—When Defaulting Party not Entitled to Reimbursement for Improvements Made.
7. A defaulting purchaser of land under a contract which made time of the essence of it and under which the vendor exercised his option to declare it ended upon breach, who had made no down payment and had paid only the first year's interest during his two years' possession, was not entitled to recover back what he had expended on the premises, under section 8658, Revised Codes, providing when a party incurring a forfeiture may be relieved therefrom.

Same—Vendor Retaking Possession Bars Him from Recovering Unpaid Purchase Price, Interest or Taxes.
8. Where a vendor exercises his option to declare the contract of sale at an end because of breach thereof by the purchaser, and retakes possession of the property, he cannot thereafter recover any unpaid portion of the purchase price, nor interest past due, nor taxes which the purchaser was required by the contract to pay but did not pay.

Appeal—Failure to Make Findings—Request for Findings not Entered on Minutes—Error not Reviewable.
9. The presumption on appeal is that the trial court did not commit error; therefore, where error was assigned on the failure of the court to make findings as requested but the record did not disclose when the request was made or that the request had been entered in the minutes as required by section 9369, Revised Codes, the assignment will not be considered.

Appeal and Error, 3 C. J., sec. 966, p. 870, n. 4; 4 C. J., sec. 2728, p. 778, n. 75.
Bills and Notes, 8 C. J., sec. 371, p. 236, n. 22.
Payment, 30 Cyc., p. 1196, n. 32; p. 1266, n. 39.
Vendor and Purchaser, 39 Cyc., p. 1357, n. 43, 45; p. 1399, n. 26; p. 1401, n. 47; p. 1423, n. 41; p. 1428, n. 63.

6. See 27 R. C. L. 656.
7. See 27 R. C. L. 664.
8. Right of vendor to unpaid installments of purchase price where contract has terminated or been rescinded ·for default of vendee, see note in L. R. A. 1916C, 893.

[73 Mont. 339.]

'*Appeal from District Court, Rosebud County; George A. Horkan, Judge.*

ACTION by J. E. Edwards and another against R. P. Muri. Judgment for plaintiffs and defendant appeals. Reversed and remanded, with direction to modify judgment.

*Mr. P. F. Leonard,* for Appellant, submitted an original and a supplemental brief and argued the cause orally.

It would appear contrary to elementary principles of law and equity for a vendor to retake the property sold, to abrogate, annul and terminate the contract, to induce the other party to consent to a mutual rescission and abandonment of the contract, to extinguish the same, and thereafter to attempt to enforce the provisions of the contract according to the terms thereof. Plaintiffs cannot disaffirm and affirm the contract at the same time. If it is an abrogation or rescission of the contract then each party must be placed in the same position in which he was before entering into the contract. There would be no restoration of the *status quo* if plaintiffs were permitted to recover the lands by simply taking them without notice and at the same time hold the purchase money paid and try to recover other installments. (See *Ogg* v. *Herman,* 71 Mont. 10, 227 Pac. 476; *Mahon* v. *Leech,* 11 N. D. 181, 90 N. W. 807; *Lasher* v. *Loeffler,* 190 Ill. 150, 60 N. E. 85; *Finch* v. *Sprague,* 117 Wash. 650, 202 Pac. 257, citing 13 C. J. 651; *Burmester* v. *Horn,* 35 Cal. App. 549, 170 Pac. 674; *Gaume* v. *Sheets,* 181 Cal. 119, 183 Pac. 535; *Ward* v. *Warren,* 44 Or. 102, 74 Pac. 482; *Warren* v. *Ward,* 91 Minn. 254, 97 N. W. 886.)

Appellant is entitled to return of moneys paid. (*Dietz* v. *Rabe,* 65 Mont. 500, 211 Pac. 343; *Heilig* v. *Parlin,* 134 Cal. 99, 66 Pac. 186; *Phelps* v. *Brown,* 95 Cal. 572, 30 Pac. 774; *Drew* v. *Pedlar,* 87 Cal. 443, 22 Am. St. Rep. 257, 25 Pac. 749; *Post* v. *Liberty,* 45 Mont. 1, 121 Pac. 475.)

*Messrs. Young & Young,* for Respondents, submitted a brief; *Mr. H. G. Young* argued the cause orally.

The vendee having defaulted in the contract and having abandoned the same, the vendors elected to terminate the contract in so far as future rights thereunder were involved, but to keep the same alive to determine their rights already accrued by reason of the contract and the breach thereof. Appellant has based his appeal solely upon the false premise that there was a mutual rescission of the contract, and for that reason all his cases cited and relied upon are not applicable in this case, as there was no mutual rescission of the contract. The law applicable to cases similar to this is stated in 13 C. J., at page 615, as follows: "Where one party to a contract abandons it or refuses further performance, the other party is entitled to rescind. He is not, however, bound to rescind, but may keep the contract alive and sue upon it for a breach; or he may adopt a middle course and treat the contract as at an end for the purpose of adjudging the rights of the parties as to the breach." This rule is sustained by the following decisions: *Clark* v. *American Development & Min. Co.,* 28 Mont. 468, 72 Pac. 978; *Cook-Reynolds Co.* v. *Chipman,* 47 Mont. 289, 133 Pac. 694; *Fratt* v. *Daniels Co.,* 47 Mont. 487, 133 Pac. 700; *DeMille* v. *Casey,* 115 Misc. Rep. 646, 189 N. Y. Supp. 275; *Winton* v. *Spring,* 18 Cal. 451, 452; *Weil* v. *Jones,* 53 Cal. 46; *Hayes* v. *City of Nashville,* 80 Fed. 641, 26 C. C. A. 59; *Anvil Min. Co.* v. *Humble,* 153 U. S. 540, 38 L. Ed. 814, 14 Sup. Ct. Rep. 876 [see, also, Rose's U. S. Notes]; *United Press Assn.* v. *National News Assn.,* 237 Fed. 547, 150 C. C. A. 429. We submit that the facts in this case come within this rule.

Assuming, for the sake of argument, that there was a mutual rescission of the contract, still the appellant cannot claim restitution and the right to be placed *in statu quo* unless he was without fault and not in default under the contract. (*Winton* v. *Spring,* 18 Cal. 451; *Aderholt* v. *Wood,*

66 Cal. App. 666, 226 Pac. 950; `Suburban Homes Co.` v.
*North*, 50 Mont. 108, Ann. Cas. 1917C, 81, 145 Pac. 2; *Bedford* v. *Burton*, 106 U. S. 338, 27 L. Ed. 112, 1 Sup. Ct. Rep.
98; *Pelioan* v. *Waldman*, 54 Cal. App. 116, 201 Pac. 344;
27 R. C. L. 428, 641.)

MR. JUSTICE MATTHEWS delivered the opinion of the
court.

The complaint herein attempts to state two causes of action; the first sets up a contract, made a part of the complaint, by the terms of which plaintiffs agreed to sell and
defendant to purchase certain lands at the agreed price of
$6,170, and for which amount defendant made, executed and
delivered his note payable December 31, 1924. The complaint alleges that by the terms of said contract the defendant agreed to pay all taxes assessed against the land and to
pay the interest on the note promptly each year. It then
alleges a breach of the contract by failure to pay either
taxes or interest after the year 1920, and that plaintiffs
elected to declare the contract null and void under the
option given them in the contract, and served upon defendant a notice to that effect on May 8, 1922. Plaintiff
seeks to recover the amount due under the contract in taxes
and interest up to the date of such notice.

The second cause of action is simply upon a promissory
note for the sum of $388.50, with interest and attorney's
fees, and is in the usual form of a complaint therefor.

The defendant interposed a demurrer to the complaint,
which was by the court overruled. Thereupon he answered,
in effect admitting all of the allegations of the first cause
of action, and setting up an affirmative defense in the nature of a cross-complaint, in which he alleges that the contract referred to was entered into by mutual mistake as to
the condition of a certain pipe-line for the conduct of water
from the canal of the Cartersville irrigation district to the

land. He further alleges that the plaintiffs made misrepre-
sentations to him regarding the pipe-line on which he relied
and without which he would not have entered into the con-
tract, and that the contract was, by reason of these facts,
mutually rescinded by the parties, each withdrawing there-
from for cause. He sets forth sums expended by him in
payment of the first year's taxes, in constructing improve-
ments and in farming operations on the land, and seeks to
be placed *in statu quo* by judgment against plaintiffs for the
amounts expended.

On the trial defendant objected to the introduction of any
testimony, which objection was overruled. At the close of
plaintiffs' case he moved a dismissal on the ground that plain-
tiffs had failed to establish either cause of action. The motion
was denied. On May 22, 1923, the court rendered judgment
for plaintiffs in accordance with their prayer for relief.

In the record before us, after recitation of the pleadings, and
before that of the judgment, appears the following statement:
"The trial of the case was commenced March 31st, 1923, and
tried to the court as an equity case and the jury dismissed.
The court took the case under advisement and the defendant
duly submitted before decision, the following requested findings
of fact." There is then set out defendant's proposed findings.

Error is assigned upon the following actions of the court:
(1) Overruling the demurrer to the complaint; (2) overruling
objection to the introduction of testimony; (3) denying motion
to dismiss; (4) failing to make findings of fact; (5) rendering
judgment in favor of plaintiffs; (6) refusing to render judg-
ment in favor of defendant.

Counsel for defendant does not attempt, in his brief or by
oral argument, to present these specifications other than as they
are treated, inferentially, in presenting the following conten-
tions: That the note, the subject matter of the second cause
of action, did not discharge the original debt nor create a debt
independent thereof; (2) that the plaintiffs abandoned, abro-

gated, and terminated the contract, and, by acquiescence of the defendant, it was mutually rescinded; (3) the defendant is entitled to the return of the money paid; (4) plaintiffs cannot abandon their contract or enforce forfeiture and recover on the contract; (5) the plaintiffs were not entitled to a forfeiture; (6) the court having failed to make requested findings, the judgment must be set aside. These contentions will be taken up in the order in which they are argued.

1. In support of his first contention counsel cites *Blenz* v. *Fogle,* 127 Wash. 224, 220 Pac. 790, citing *Leschen Co.* v. *Mayflower Gold Mining & Reduction Co.,* 173 Fed. 855, 25 L. R. A. (n. s.) 1, 97 C. C. A. 465, and other cases in point. The rule contended for is laid down in the cases cited, but with the qualification, ''in the absence of an agreement between them [the parties] to that effect,'' and they correctly state the rule that the burden of showing an agreement rests upon the one asserting it.

The testimony regarding the purpose of giving the note is very meager. J. E. Edwards testified, when asked concerning payments, that ''the first year's interest was paid by a promissory note,'' and later, in introducing the note, that the defendant gave it ''in payment of the first year's interest.'' That it was his understanding that the note paid the interest for the first year is evidenced by the fact that, in the complaint, plaintiffs sued, in the first cause of action, for interest after the first year and sued on the note in question as an independent transaction. That this was also the understanding of the defendant is shown by the fact that he did not deny, on the stand, the statement of plaintiff, but, when asked by the court, ''You intended to pay the interest with the note?'' his reply was, ''Yes''; and again, when he was asked, ''So far as you and Mr. Edwards were concerned that transaction was completely closed?'' he replied, ''The first year, yes.''

The court evidently and necessarily found from this testimony that there was an agreement between the parties

that the note would be accepted in payment, or that, in the language of the decision in the case of *Leschen* v. *Mayflower Gold Mining & Reduction Co.*, above, it was "the indubitable intention of both parties" to extinguish the pre-existing debt by the taking of the note. In support of the judgment on the second cause of action a finding to that effect will be presumed. (*Haggin* v. *Saile*, 23 Mont. 375, 59 Pac. 154; *Slater Brick Co.* v. *Shackleton*, 30 Mont. 390, 76 Pac. 805; *Hansen* v. *Larsen*, 44 Mont. 350, 120 Pac. 229.)

By accepting the note plaintiffs waived the right to declare [3] the contract terminated by the breach thereof, and extended the time in which the amount might be paid, which extension was a sufficient consideration for the note. (Sec. 8432, Rev. Codes 1921; *Emerson-Brantingham I. Co.* v. *Anderson*, 58 Mont. 617, 194 Pac. 160.)

While, therefore, the original debt for which this note was given arose out of the contract for the sale of the land, it stood on no different basis at the time of the trial than if it had been given in an entirely different transaction, and the entry of judgment thereon was not erroneous.

2. As to the second contention, the evidence clearly estab- [4, 5] lishes the fact that defendant defaulted in payment and left the premises, and that thereafter plaintiffs leased them to a third party, but with the understanding that, if defendant returned, he was still to have possession. This action did not terminate the contract (*Gutierrez del Arroyo* v. *Graham*, 227 U. S. 181, 57 L. Ed. 472, 33 Sup. Ct. Rep. 248 [see, also, Rose's U. S. Notes]), but, defendant having thereafter continued in his default, plaintiffs on May 8, 1922, terminated the contract by written notice, as provided for in the contract. Counsel for defendant contends that, as this action was acquiesced in by defendant, it was a rescission of the contract by mutual consent. But this cannot be.

Section 7563, Revised Codes of 1921, provides that "a contract may be extinguished in like manner with any other obli-

gation, and also in the manner prescribed by this chapter."
Thus, by mutual consent, the parties to a contract may ter-
minate the contract and all obligations thereunder. But in
order to thus terminate the contract there must be an intention
on the part of each, at the same time, to rescind the contract—
a meeting of the minds. Rescission "is the unmaking of a
contract, requiring the same concurrence of wills as that which
made it, and nothing short of this will suffice." (*Clark* v.
*American Dev. & Min. Co.,* 28 Mont. 468, 72 Pac. 978.)
"Mutual rescission, or rescission by agreement, has been defined
as the discharge of both parties from the obligation of a con-
tract, assumed to be in existence and to be legally binding,
by a new agreement made subsequently to the original contract
and before performance thereof is due." (13 C. J. 600; *Hol-
land* v. *Rhoades,* 56 Or. 306, 106 Pac. 779.) The facts adduced
and heretofore set out fall far short of showing any agreement
between these parties.

Again, counsel contends that the defendant rescinded the
[6] contract for misrepresentations made. Section 7565, Re-
vised Codes of 1921, provides that "A party to a contract may
rescind the same  *  *  *  if the consent of the party re-
scinding,  *  *  *  was given by mistake, or obtained through
duress, menace, fraud, or undue influence," *etc.* But "rescis-
sion, when not effected by consent, can be accomplished only by
the use on the part of the party rescinding, of reasonable dili-
gence to comply with the following rules: 1. He must rescind
promptly, upon discovering the facts which entitle him to re-
scind, if he is free from duress, menace, undue influence, or
disability, and is aware of his right to rescind; and 2. He must
restore to the other party everything of value which he has
received from him under the contract.  *  *  *  " (Sec.
7567, Rev. Codes 1921; *Turk* v. *Rudman,* 42 Mont. 1, 111 Pac.
739; *Ott* v. *Pace,* 43 Mont. 82, 115 Pac. 37; *Hills* v. *Johnson,*
52 Mont. 65, 156 Pac. 122.)

Defendant made no attempt to rescind the contract for more than two years after he discovered his alleged mistake and plaintiffs' alleged misrepresentations, and then only by his answer in this action. He made no attempt to restore to the plaintiffs anything of value which he had received under the contract, but merely abandoned the premises. More than a year after he discovered that the alleged representations made by the plaintiffs were not in accordance with the facts, without apparent complaint he gave to plaintiffs his promissory note for the interest past due in consideration of being permitted to continue in possession of the land under the contract. Under these circumstances he could not prevail had he shown clearly that misrepresentations inducing the execution of the contract had been made, and, in this connection, the evidence was, to say the least, conflicting.

3. As to whether he was entitled to recover back what he [7] had expended on the premises under the contract would depend upon whether he brought himself within the provisions of section 8658, Revised Codes of 1921, which reads: "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty." Of this section this court has said: "Whatever may be the correct interpretation of the language of that section, this much is apparent: The very minimum requirement is that the party invoking the protection afforded by that section must set forth facts which will appeal to the conscience of a court of equity. 'He may be relieved upon a showing that he is equitably entitled to such relief, if his breach of duty was not grossly negligent, willful or fraudulent.' *Cook-Reynolds Co.* v. *Chipman* (47 Mont. 289, 133 Pac. 694.) * * * It appears affirmatively that the defendants had possession of the land for more than a year. There was but $637 paid on the

purchase price.    The value of the use of the premises does not
appear; and, even conceding that these are proper subjects of
consideration in a case of this character—and upon that we do
not express any opinion at all—yet, when all is said by appel-
lant that can be said in its behalf, it failed to make any excuse
or to disclose wherein the conscience will be shocked by permit-
ting the plaintiffs to take advantage of the term in the con-
tract which made time of its essence." (*Fratt* v. *Daniels-Jones
Co.*, 47 Mont. 487, 133 Pac. 700.)

Here time was made of the essence of the contract, and it
must be remembered, there was no down payment on the land.
The consideration for the contract was but $1, and the only
payment made under the terms of the contract was the sum of
$193, paid in taxes the first year.    Defendant had possession
for two years.

As to improvements made upon the land, the general rule
is: "Where the purchaser is in default and the vendor exercises
his right to terminate the contract and retake possession, he
does not thereby    *   *   *    incur any liability to reimburse
the purchaser on account of improvements erected." (27
R. C. L. 428.)

With reference to relief from forfeiture, the author in Ruling
Case Law has this to say: "Where the contract gives the vendor
the right to terminate the contract on the failure of the pur-
chaser to make the stipulated payments, it has been held that
a court of equity, under its general jurisdiction to relieve
against forfeitures, may relieve the purchaser from the for-
feiture so incurred, though he has been guilty of a technical
default; as in a case where he has paid a large portion of the
purchase money; made valuable improvements upon the prop-
erty, and his default was the result of fraud, accident or mis-
take, or the vendor should attempt to exercise the power of
forfeiture in a case not fairly within its scope.    *   *   *   *   "
(27 R. C. L., sec. 430.)

On a contention of this nature each case must be decided on its own facts, and the defendant has not brought himself within the purview of the decision in *Cook-Reynolds Co.* v. *Chipman, supra,* nor in *Hollingsworth* v. *Ruckman,* 72 Mont. 147, 232 Pac. 180.

In *Suburban Homes Co.* v. *North,* 50 Mont. 108, Ann. Cas. 1917C, 81, 145 Pac. 2, it is said: "The right to recover in such case is an exception to the general rule that the law forfeits to the innocent party all payments made, or the value of acts done, in part performance by the other party, when he stops short and refuses to proceed to the ultimate conclusion."

In *Clark* v. *American Dev. & Min. Co.; supra,* the court quoted from *Lawrence* v. *Miller,* 86 N. Y. 131. While the contract under consideration in the *Clark Case* was an option contract, that in the New York case was a contract for the purchase of real property; the purchaser, having defaulted, sought to recover back money paid on the contract. The supreme court of New York said: "The defendant came by it rightfully, in pursuance of a contract lawfully made, between competent parties. He has made no breach of that contract. He has failed in no duty to the vendee. Wherefore, then, should he give up that which was rightfully his own? When and whereby did it cease to be his and to be due to the vendee? If the contract had been kept by both parties, the money paid would still be his of right. * * * To allow a recovery of this money would be to sustain an action by a party on his own breach of his own contract, which the law does not allow * * * ; to declare that a party may violate his agreement, and make an infraction of it by himself a cause of action. That would be ill doctrine."

The showing made in this case is not such as to shock the conscience, in that the court permitted plaintiffs to retain the benefits they had derived from the contract while it was in effect.

4. However, while the plaintiffs cannot be compelled to re-
[8]  turn to the defendant anything received on the contract,
can they recover, after terminating the contract, any payments
past due at the time of such termination?

The general rule is that "if the vendor exercises his option
to declare the contract at an end, he cannot change his position
and thereafter hold the purchaser liable to complete the pur-
chase or pay any part of the unpaid purchase price.  The
remedy of the vendor by way of cancellation of the contract
and the continued liability of the purchaser for the purchase
money are totally inconsistent," *etc.*  "This is true as regards
the liability of the purchaser for unpaid installments of the
purchase money overdue at the time of the vendor's election to
terminate the contract."  (27 R. C. L. 666.)  "In other words,
he cannot reclaim the property under a forfeiture clause in the
sale contract   *   *   *   and at the same time recover any por-
tion of the unpaid sale price."  (*Blenz* v. *Fogle, supra.*)

It is suggested that there is a difference between seeking to
recover for installments on the purchase price and for taxes
paid by the vendor and interest past due; but this question
has been definitely disposed of in this state contrary to the con-
tention of plaintiffs on this subject.  In the case of *De Young*
v. *Benepe,* 55 Mont. 306, 176 Pac. 609, the plaintiff sued for
goods, wares and merchandise sold and delivered to the defend-
ant; by counterclaim the defendant set up a contract for sale
of lands which had been terminated for default, and claimed
interest due on the principal note and taxes, as do the plain-
tiffs in this case.  In holding that the court should have sus-
tained the demurrer to the complaint, this court said: "It is
manifest that, when the defendant had exercised his option to
terminate the   *   *   *   contract, as therein provided, it was
at an end for all purposes as a binding obligation upon either
party, and could not thereafter be made the basis of an action.
The result was that the defendant was released from his obli-
gation to make a conveyance of the land, and the plaintiff from

his obligation to pay the purchase price, including the interest, and also the taxes for the year 1912. Thereafter the defendant could not be heard to assert that the plaintiff was bound to answer to him for a breach of the contract. He could not oust the plaintiff from the land, as he did, and then claim that plaintiff was indebted to him in any amount."

But counsel for plaintiffs assert that this court announced a different rule in the case of *Clark* v. *American Dev. & Min. Co., supra,* and quotes, as from that decision, the following language: " 'Besides technical rescission, there is a mode of abandoning a contract as a live and enforceable obligation which still entitles the party declaring its abandonment to look to the contract to determine the compensation he may be entitled to under its terms for the breach which gave him the right of abandonment' * * * ; 'such an abandonment is not technically a rescission of the contract, but is merely an acceptance of the situation which the wrongdoing of the other party has brought about.' " This is not an original declaration of this court, but merely a quotation from *Hayes* v. *City of Nashville,* 80 Fed. 641, 26 C. C. A. 59, which was an action for damages for a breach of a contract, wherein special damages were alleged and proved, and, while it was applicable to the point under consideration in the *Clark Case,* i. e., whether a cancellation of a contract for its breach was a rescission entitling the parties to be placed *in statu quo,* it is not applicable to the question here considered.

5. Defendant asserts that the trial court committed reversible [9] · error in failing to make findings of fact. In this connection counsel has incorporated in the record the following statement: "The trial of the case was commenced March 31, 1923, and tried by the court as an equity case and the jury dismissed. The court took the case under advisement, and the defendant duly submitted before decision the following requested findings of fact." It does not appear from the record whence came the statement; it is not certified as a minute

entry of the court, nor, from its face, does it seem that it was a minute entry made by the court. It is not dated, and it does not appear therefrom when the defendant submitted the requested findings, other than that this was done "before decision."

The statute applicable reads: "No judgment shall be reversed on appeal for want of findings at the instance of any party who, at the close of the evidence and argument in the cause, shall not have requested findings in writing, and had such request entered in the minutes of the court." (Sec. 9369, Rev. Codes 1921.) The judgment was not rendered until May 22, 1923, twenty days after the trial, and, for all that appears in the above statement, the request may have been made at any time between March 31 and May 22. The statute above quoted imposed upon defendant the duty of submitting his proposed findings "at the close of the evidence and argument." (*State ex rel. Quintin* v. *Edwards*, 40 Mont. 287, 20 Ann. Cas. 239, 106 Pac. 695.) And in addition to the submission, the legislature has imposed upon the defendant the burden of having the request entered on the minutes of the court, on penalty that his objections shall not be considered unless he "shall * * * have * * * had" the entry made. Such is the wording and meaning of the statute, and this court has, in effect, so held in *Bordeaux* v. *Bordeaux*, 43 Mont. 102, 115 Pac. 25; *Hoskins* v. *Scottish Union etc. Ins. Co.*, 59 Mont. 50, 195 Pac. 837.

The presumption is that the trial court did not commit error. (*Dover Lumber Co.* v. *Whitcomb*, 54 Mont. 141, 168 Pac. 947.) And the defendant cannot be aided by the presumption that the clerk regularly performed his duty (sec. 10606, subd. 15, Rev. Codes), for to indulge in the presumption that the clerk entered the request, if made at the proper time, in the minutes of the court would be to presume that the trial court erred.

The trial court cannot be put in error for failure to make findings in the absence of an affirmative showing of compliance

73 Mont.—23

with the statutory requirements, and no such showing was here made.

6. In view of what has been heretofore said, it is apparent that the trial court erred in overruling the demurrer as to the first cause of action and in entering judgment for the amount claimed therein.

The judgment is reversed and the cause remanded to the district court of the fifteenth judicial district, with directions to modify the judgment herein by striking therefrom the amount of said judgment based upon the first cause of action, and to enter judgment only for the amount awarded upon the second cause of action.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.

Rehearing denied June 10, 1925.